IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL A. RAY, | No. 2:22-CV-2187-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 3 and 7, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c); see also ECF No. 9 (minute order reassigning case to Magistrate Judge). Pending before the Court are the parties' briefs on the merits, ECF Nos. 14 and 17.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1   Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2   If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3   If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

///

|   |   |   |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff filed for social security benefits on February 21, 2013, alleging disability starting on October 28, 2009. See 18.[1] After a hearing, Plaintiff's 2013 application was denied in a decision issued on April 11, 2014. See id. at 18-27. The Appeals Council denied review on October 20, 2015, see CAR 1-6, and Plaintiff filed an action for judicial review. Plaintiff's appeal was granted, and the case was remanded to the Commissioner for further proceedings on the 2013 application. See id. at 619.

Pursuant to the remand order, the Appeals Council directed an ALJ to further evaluate Plaintiff's mental impairments, give further consideration to Plaintiff's residual functional capacity, and obtain vocational expert testimony to clarify the effect of Plaintiff's limitations on the occupational base. See id. Following a second hearing held on March 27, 2017, Plaintiff was again found not disabled. See id. at 619-630. The Appeals Council again denied review, see CAR 598-604, and Plaintiff filed a second action for judicial review of the 2013 application. Once again, Plaintiff case was remanded to the Commissioner for further proceedings. See CAR 929.

The Appeals Council directed that a third administrative hearing be held, which occurred on May 5, 2021. See id. at 855. In a June 9, 2020, decision by Administrative Law Judge (ALJ) Matilda Surh, Plaintiff was found not disabled. See id. at 855-867. The ALJ determined as follows:

1.  Through the date last insured, December 31, 2012, the claimant had the following severe impairment(s): degenerative disc disease of the cervical and thoracic spine (20 CFR 404.1520(c));

2.  Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.  Through the date last insured, the claimant had the following residual functional capacity: to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift 20 pounds occasionally and ten pounds frequently, and stand, walk or sit for six hours each in an eight-hour workday; the claimant can occasionally climb ramps, stairs, ladders, ropes

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on March 3, 2023, ECF No. 12.

     or scaffolds; the claimant can occasionally balance, stoop, kneel, crouch, and crawl; the claimant can frequently handle and finger bilaterally; the claimant is limited to frequent rotation, flexion or extension of the neck;

4.  Considering the claimant's age, education, work experience, residual functional capacity, vocational expert testimony, and the Medical-Vocational Guidelines, through the date last insured there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

See id. at 857-67.

After the Appeals Council declined review on October 1, 2022, this third appeal concerning the 2013 application followed.

### III. DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ failed to properly evaluate the opinions of Dr. Burt; and (2) the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's subjective statements and testimony.

  **A.**  **Evaluation of Dr. Burt's Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d

1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

For all claims, as here, filed before March 27, 2017, ALJs are bound by regulations and case law requiring ALJs to give physicians' opinions appropriate and potentially differing weights, depending on the relationship between the physician and the claimant. See 20 C.F.R §§ 404.1527(c) & 416.920(c); Garrison v. Colvin, 759 F.3d 995, 1017-18 (9th Cir. 2014). This rule is known as the treating physician rule. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion in a claim filed before March 27, 2017, the Court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

At Step 4, the ALJ considered medical opinions from the following sources: (1) State agency psychological consultants; (2) Dr. Christopher Amsden, who provided Plaintiff with pain management; (3) Dr. Aruna Rao, who also provided Plaintiff with pain management; (4) Dr. Andrew Burt, an orthopedic surgeon who examined Plaintiff; (5) Dr. E. Gilpeer, a State agency medical consultant; (6) Dr. P. Ligot, a State agency medical consultant; and (7) Dr. Robert Thompson, a medical expert. See CAR 859-65.

Plaintiff only takes issue with ALJ's evaluation of Dr. Burt's opinion. See ECF No. 14, pgs. 8-12. In evaluating Dr. Burt's opinion, the ALJ stated:

> Dr. Burt, a qualified medical examiner, opined the claimant's "cervical spine currently restricts [her] to light work," which "contemplates the ability to work in a standing and walking position with minimum demands for physical effort" (Ex. 3F). Dr. Burt further opined the claimant is precluded from overhead work (Id.). Dr. Burt did not define "light" and "minimum" (Id.). Therefore, this opinion failed to provide specific work-related limitations (Id.). While workers' compensation disability ratings are not dispositive for this agency's finding on disability, I have attempted to translate Dr. Burt's opinion into corresponding language within the Social Security Administration's definition of light work. Here, Dr. Burt defined "light" as having a "minimum demands of physical effort" (Ex. 3F), which suggests he precluded the claimant from such efforts as lifting up to 50 pounds occasionally and limited the claimant to light exertion as defined at 20 CFR 404.1567. For the same reasons discussed regarding the opinions of Drs. Gilpeer and Ligot, I give great weight to Dr. Burt's

> opinion regarding the claimant's exertional abilities to the extent it is consistent with the Agency's definition of light work. Further, Dr. Burt's opinion regarding the claimant's ability to lift overhead is overly restrictive given the claimant's positive response to epidural steroid injections with reported improved functioning and clinical examinations documenting forward flexion to 35 degrees, and cervical extension to 25-to-40 degrees. For these reasons, I give partial weight to Dr. Burt's opinion.

CAR 863-64.

First, Plaintiff argues that the ALJ erred in equating "light" and "minimum" to an ability to light exertion as that term is defined in the social security regulations. See ECF No. 14, pgs. 10-11. Second, Plaintiff argues that the ALJ's determination that Dr. Burt essentially found Plaintiff can perform light work fails to take into account thoracic spine limitations, which were not considered by Dr. Burt, whose opinion was limited to Plaintiff's cervical spine impairment. See id. at 11. Plaintiff does not appear to take issue with the ALJ's rejection of Dr. Burt's opinion concerning the ability to lift overhead.

Dr. Burt's November 27, 2012, opinion following examination is contained with the record at Exhibit 3F. See CAR 216-24. Dr. Burt performed an orthopedic examination. See id. at 219. Dr. Burt first noted that Plaintiff did not use any supportive device and was careful in changing position so as to guard her spine. See id. Examination of the neck revealed "some increased lordosis." Id. Range of motion was limited at the cervical spine. See id. Flexion, however, was normal with some pain. See id. Extension was limited to 45 degrees compared to normal at 60 degrees. See id. Lateral bending is limited to 30 degrees left and 40 degrees right compared to normal at 45 degrees bilaterally. See id. Rotation was limited to 45 degrees left and 50 degrees right compared to normal of 80 degrees. See id. Plaintiff was observed to move stiffly. See id. Deep tendon reflex was hypoactive but described as "normal." Id. Grip strength was essentially normal. See id. at 220.

Dr. Burt diagnosed chronic degenerative neck pain with bilateral cervical radiculopathy, cervical spine stenosis, and multilevel degenerative cervical disc and facet disease. See id. at 221. In the context of a workers' compensation review, Dr. Burt concluded that Plaintiff was restricted to "light work." Id. at 222. Dr. Burt specially stated that this conclusion

"complicates the ability to work in a standing and walking position with minimum demands for physical effort." Id. Dr. Burt further opined that "[o]verhead work will be precluded." Id.

The Court agrees with Plaintiff that the ALJ must consider the definitional distinction between the Social Security scheme and California worker's compensation scheme in evaluating the opinions of examining professionals. See Desrosiers v. Secretary of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). "Under the California workers' compensation system, a claimant . . . may be capable of performing 'light,' 'semi-sedentary,' or 'sedentary' work. See id. at 576 (citing Schedule for Rating Permanent Disabilities, Guidelines for Work Capacity, 1–A (Labor Code of the State of California)). In Desrosiers, the court found that the ALJ did not adequately consider the distinction between the Social Security disability scheme and the California workers' compensation claim scheme, and as a result, incorrectly held that the doctors' reports contradicted the plaintiff's disability claim. See id.

Plaintiff contends that, as in Desrosiers, the ALJ in this case failed to consider the distinction. See ECF No. 14, pgs. 10-11. The differences between disability claims and workers' compensation claims, however, is not the only reason cited by the ALJ for discounting Dr. Burt's opinions. Plaintiff does not contend that Dr. Burt's opinions contradict her claim, or that the ALJ incorrectly concluded that Dr. Burt's report contradicted her claim. Furthermore, the ALJ's decision indicates she did note the distinction between the aforementioned schemes. See CAR 863 ("While workers' compensation disability ratings are not dispositive for this agency's finding on disability, I have attempted to translate Dr. Burt's opinion into corresponding language within the Social Security Administration's definition of light work."). Therefore, the Court does not find Plaintiff's argument persuasive.

Plaintiff next states that the ALJ misinterpreted Dr. Burt's use of the word "minimum." See ECF No. 14, pg. 10. Specifically, Plaintiff cites Merriam Webster's definition of "minimum" to contend that Dr. Burt's report intended to limit Plaintiff to "sedentary" work, rather than "light" work as defined in 20 C.F.R. § 404.1567, as the least amount of work per the regulations is "sedentary." Id. (noting that "[t]he exertional categories per [20 C.F.R. § 404.1567] range from sedentary, light, medium and heavy"). Dr. Burt's report states "[d]isability residual at

the cervical spine currently restricts to *light work*. This complicates the ability to work in a standing and walking position with *minimum* demands for physical effort." CAR 222 (emphasis added). As previously mentioned, the California workers' compensation system demonstrates the type of work that an employee is capable of performing, with "light" work denoting the employee is able to walk for most of the day and entails a minimum of demands for physical effort. Schedule for Rating Permanent Disabilities, Guidelines for Work Capacity, 1-A (Labor Code of the State of California). 20 C.F.R. § 404.1567 defines sedentary work as "one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties" while light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." In light of the similarities between Dr. Burt's findings and the description of light work by the Social Security Administration, the Court finds the ALJ's interpretation of Dr. Burt's report is reasonable.

    Dr. Burt's report states, "[f]or all practical purposes, her cervical spine disability has resulted in inability[2] to compete in the labor market beginning in about 2008." CAR 223. As previously stated, the Court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

    First, the Court examines whether contradictory opinions are in the record. Id. Here, Drs. Gilpeer and Ligot both opined, in contradiction to Dr. Burt, that Plaintiff can "lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours during an eight-hour workday, and sit for six hours during an eight-hour [workday]." CAR 862. This opined capability is consistent with "light" work as defined in 20 C.F.R. § 404.1567, and thus, would likely contradict Dr. Burt's opinion.

---

  [2] The report includes a correction, presumably by Dr. Burt, so that it reads "inability," as opposed to "ability." CAR 223.

The ALJ summarized the opinions provided by Drs. Gilpeer and Ligot as follows:

> As discussed, while there is evidence of moderate-to-severe right foraminal stenosis at C5-C6 and mild-to-moderate foraminal stenosis at other levels, there is no evidence of muscle atrophy or significantly reduced grip strength on clinical examination (Exs. 1F and 3F). Further, the claimant's chronic pain and radicular symptoms were effectively managed for prolonged periods with epidural steroid injections; this finding is consistent with the claimant's subjective reports of prolonged pain relief and improved function with such treatment (Exs. 5F, 12F and 14F). The claimant received epidural steroid injections about two times per year during the relevant period, which further indicates this treatment was effective in managing her symptoms for prolonged periods (*Id.*). Moreover, she consistently endorsed tolerable pain levels with use of medications, primarily Norco and methadone, and denied significant medication side effects (*Id.*). The claimant's subjective reports of positive response to treatment are inconsistent with her allegations of disabling pain symptoms (*Id.*). Finally, the claimant reported that treating medical providers had reviewed her MRI scan dated June 2012 and concluded the findings "have remained essentially unchanged since the earlier [scan] that she had back in the 1990s" (Ex. 3F). This statement indicates the claimant's allegedly disabling cervical impairment was present at approximately the same level of severity prior to her alleged onset date of disability. *The fact that her cervical impairment did not prevent her from working at the light exertional level at that time strongly suggests that it would did not preclude light work during the relevant adjudicatory period* (Exs. 10D, 11D, 11E, 14E, 17E and 3F; Hearing Testimony, May 2020). In sum, considering the image studies of record, the claimant's clinical examination findings and her positive response to treatment, I give great [weight] to the opinions of Drs. Gilpeer and Ligot as they pertain to the claimant's exertional and postural abilities. However, considering the claimant's complaints of worsening cervical symptoms in the setting of constant cervical flexion, extension or rotation in conjunction clinical examinations documenting cervical stiffness and with her positive response to epidural steroid injections, I find she is further limited to frequent rotation, flexion or extension of the neck (Exs. 3F, 5F, 12F, 14F and 15F). Finally, considering the claimant's reports of some reduced grip strength, but positive response to epidural steroid injections and lack of significantly reduced strength, including grip, I find she can frequently handle and finger (*Id.*). In sum, I give partial weight to their opinion.

CAR 862-63 (emphasis added).

Given this discussion, the Court finds the ALJ provided a detailed, thorough summary of the facts and conflicting clinical evidence through her aforementioned assessment of the opinion of Drs. Ligot and Gilpeer. See id. She then stated her interpretation of the evidence before making a finding, conformed to valid regulations, and resolved the conflict, accordingly. 42 U.S.C.A. § 405(g); see Magallanes, 881 F.2d at 751-55. The Court finds the ALJ's finding is based on proper legal analysis supported by substantial evidence.

11

**B.     Evaluation of Plaintiff's Subjective Statements and Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and

(5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

At Step 4, the ALJ considered Plaintiff's subjective statements and testimony. CAR 861-62. The ALJ summarized Plaintiff's testimony as follows:

> The claimant alleged disability secondary to degenerative disc disease of the thoracic and cervical spine with associated disc bulging, stenosis and bone spurs (Exs. 2E, 6E and 8E; Hearing Testimony, May 2020). As a result of chronic neck pain with radicular symptoms in her upper extremities, she alleged difficulty doing certain activities, such as fixing her hair, putting dishes away, sweeping and dusting (*Id.*). During a qualified medical examination, the claimant alleged constant neck pain, which worsened with flexion, extension and rotation (Ex. 3F). She also alleged radiating pain to the mid-back between her shoulder blades and numbness and tingling in both hands (*Id.*). She reported difficulty handling small objects and limited tolerance to grasping (*Id.*). She corroborated these allegations at the hearing (Hearing Testimony, May 2020).

CAR 861.

In evaluating Plaintiff's statements and testimony, the ALJ stated:

> The claimant suffered a cumulative work-related injury to her neck in 1994, which was treated with epidural steroid injections, physical therapy and medication management, including Lidocaine patches, Norco and methadone (Ex. 3F/2-3). These treatment modalities helped control her pain and improve her quality of life (Ex. 3F/3). She subsequently returned to work at substantial gainful activity levels (Ex. 11D). In June 2012, a magnetic resonance imaging (MRI) scan of the claimant's cervical spine showed mild hypertrophic changes of the facets at C3-C4 with no central spinal canal or foraminal stenosis, mild-to-moderate hypertrophic changes of the facets at C4-C5 with mild left-sided foraminal stenosis, moderate hypertrophic changes of the facets at C5-C6 with moderate-to-severe right and mild-to-moderate left foraminal stenosis, mild-to-moderate hypertrophic changes of the facets at C6-C7 with mild-to-moderate left-sided foraminal stenosis (Ex. 1F). While these images are partially consistent with her allegations of chronic cervical symptoms, the claimant reported these MRI findings had remained essentially unchanged since the 1990s, which suggests her cervical impairment had been stable since that time and had not preclude full-time work activity (Exs. 11D and 3F/4). In September 2012, an x-ray of the claimant's thoracolumbar spine showed

mild degenerative multilevel disc findings and spondylosis (Ex. 2F and 4F/43). These mild findings are inconsistent with disabling thoracic symptoms.

During the relevant period, the claimant's residual cervical symptoms were responsive to treatment, including epidural steroid injections and medication management. Specifically, from March 2007 through October 2013, the claimant received pain management from Christopher Amsden, M.D. and Aruna Rao, M.D. at Modesto Pain Medicine (Exs. 5F, 12F, 14F and 15F). The claimant rated her pain levels as 3-to-7 on a scale from 1-to-10 (*Id.*). The claimant's clinical examinations documented centralized cervical tenderness, spasms in cervical paraspinal muscles, stiffness with motion of the neck, dysesthesias to light touch in the C5, C6 and C7 dermatomes, cervical forward flexion to 35 degrees, cervical extension to 25-to-40 degrees, and limited cervical side bending and rotation secondary to pain and discomfort (*Id.*). With treatment, including epidural steroid injections and medication management, the claimant reported improved pain relief and function. For example, the claimant stated gabapentin reduced her neve pain from 6 to 3 on a scale from 1-to-10. (*Id.*). She reported methadone made her pain "tolerable" allowing her to "handling her pain better" (*Id.*). She further noted carisoprodol helped "significantly for muscle pain and spasms" and relaxed her muscles (*Id.*). The claimant experienced good symptom relief with epidural steroid injections, which she received in December 2008, March 2009, July 2009, March 2010, August 2010 and April 2012 (*Id.*). These injections provided extended pain relief, improved her grip strength and increased her mobility (*Id.*). The claimant's pain level was consistently reported as tolerable (*Id.*). She experienced some side effects from her medications, specifically reflux; however, this side effect resolved with use of proton pump inhibitors (*Id.*). In September 2012, the claimant reported feeling good (Ex. 4F). Medical records dated after the claimant's alleged onset date documented similar findings and treatment modalities (Ex. 18F). Notably, in December 2019, nerve conduction and electromyography studies showed no evidence of cervical radiculopathy, which suggests improvement in her alleged radicular symptoms (Ex. 21F). In sum, during the relevant adjudicatory period, the claimant's residual cervical symptoms were effectively managed with biannual epidural steroid injections and regular medication management.

In November 2012, Andrew Burt, M.D., an orthopedic surgeon and qualified medical examiner, examined the claimant (Ex. 3F). Despite the claimant's allegations of worsening symptoms, she noted that treating medical providers had reviewed her recent MRI scan and concluded the findings "have remained essentially unchanged since the earlier [scan] that she had back in the 1990s," which suggests the claimant's cervical symptoms would not have precluded work during the relevant period (*Id.*). Upon examination, the claimant did not use any supportive device, but changed positions carefully (*Id.*). Inspection of her neck revealed some increased lordosis, increased dorsal kyphosis, some prominence at the dorsal spine at about C7, and tenderness to palpation in the midline at the base of the neck and on either side of the vertebral column (*Id.*). She had limited cervical range of motion, including limited extension to 45 degrees, lateral bending to 30 degrees, rotation to 45 degrees on the left, and rotation to 50 degrees on the right (*Id.*). There was spasm in the cervical paraspinous muscles with extension and lateral bending (*Id.*).

> There was some patchy numbness to sharp stimulation with a pinwheel on both sides (*Id.*). Despite the claimant's allegations of chronic weakness, there was no evidence of significant muscle atrophy or grip strength differential, which is inconsistent with the claimant's allegations of disabling weakness (*Id.*). Dr. Burt diagnosed the claimant with chronic discogenic neck pain with bilateral cervical radiculopathy, central and neuroforaminal cervical spinal stenosis, and multilevel degenerative cervical disc and facet disease (*Id.*).

CAR 861-62.

Plaintiff argues the ALJ erred in the following ways: (1) the ALJ's citation to improvement with treatment lacks context; (2) the ALJ's reliance on inconsistency with the objective clinical findings is misplaced and, even if not, would be insufficient alone to discount Plaintiff's subjective statement and testimony. See ECF No. 14, pgs. 12-19.

        1.        <u>Improvement with Treatment</u>

Plaintiff contends that the ALJ relied too heavily on evidence she was "doing well" because this measure does not necessarily relate to work-related functional capacity. See <u>id.</u> at 13-14 (citing <u>Hutsell v. Massanari</u>, 259 F.3d 707, 712 (8th Cir. 2001), and <u>Ryan v. Commissioner of Social Security</u>, 528 F.3d 1194, 1200-01 (9th Cir. 2008)). In support of this argument, Plaintiff refers to various treatment notes between November 2011 and December 2012 documenting Plaintiff's complaints of pain symptoms. See ECF No. 14, pgs. 14-16. Though Plaintiff concedes that her symptoms improved with injections and medications, she nonetheless remained, as exhibited by the referenced objective records, disabled by pain. See <u>id.</u> at 16-19.

While the Court agrees with Plaintiff's overall statement that improvement of symptoms with medication and treatment does not <u>necessarily</u> equate to an ability to engage in work-related activities, here, both Drs. Ligot and Gilpeer opined, based on all the medical evidence including evidence of Plaintiff's response to medical and treatment, that Plaintiff can perform the demands of light work with the restrictions imposed by the ALJ.

        2.        <u>Inconsistency with Objective Clinical Findings</u>

Plaintiff argues that the ALJ's determination that Plaintiff's subjective testimony and statements were inconsistent with the MRI results is unsupported. See ECF No. 14, pg. 17-18. Presuming the Court agrees that the ALJ erred in relying on improvement with medication

15

and treatment, Plaintiff also contends that, as the only valid reason remaining, the ALJ impermissibly relied on inconsistency with the MRI results.  See id. at 18-19.  Plaintiff's argument is not dispositive because, as discussed above, the Court finds that the ALJ properly cited improvement.  Thus, the ALJ did not err by relying solely on inconsistency with MRI results regardless of whether the ALJ assessed those results correctly.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment, ECF No. 14, is DENIED.
2. Defendant's motion for summary judgment, ECF No. 17, is GRANTED.
3. The Commissioner's final decision is AFFIRMED.
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  March 7, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE